**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Suzette McInnis, on behalf of herself and a class of all those similarly situated, | Civ. No. 11-02196 (SRN/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ecolab Inc., Ecolab Savings Plan and ESOP, and Other Plan Fiduciaries County, | |
| Defendants. | |

---

Jamie S. Franklin, Esq., The Franklin Law firm LLC, and Siegel Brill PA, counsel for Plaintiff.

David Haase, Esq., Deidre A. Grossman, Esq., Holly M. Robbins, Esq., Andrew J. Voss, Esq., and Shirley O. Lerner, Esq., Littler Mendelson PC, counsel for Defendants.

_____

Jeffrey J. Keyes, United States Magistrate Judge

## INTRODUCTION

The parties entered into a settlement agreement in this case after Court supervised settlement conferences that occurred on December 8, 2011, and January 31, 2012. This Court has scrutinized the settlement and concludes that it is fair and reasonable.

**PROCEDURAL BACKGROUND**

Plaintiff commenced this action in February 2011 on her behalf and purportedly on behalf of other contractors who performed food safety audit work for EcoSure, a division of Ecolab Inc.  Plaintiff claimed that she and the other "field service specialists" she sought to represent were improperly classified as independent contractors.  The Complaint set forth three claims based on this alleged misclassification.  First, Plaintiff sought relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, alleging that Ecolab failed to properly compensate Plaintiff for overtime hours worked.  Plaintiff's second and third causes of action asserted claims under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, for employee benefits.  Defendants answered Plaintiff's Complaint, denying all of Plaintiff's claims.

Thereafter, Defendants filed a motion to dismiss Plaintiff's ERISA claims in their entirety; that motion was scheduled to be heard on March 15, 2012.  However, while still early in the case and before an FLSA collective was conditionally certified, the parties entered into settlement discussions that concluded on January 31, 2012, with settlement reached.

**DISCUSSION**

A.  <u>Standard of Review for Settlement Fairness</u>

The FLSA does not specifically address the Court's authority or responsibility to oversee the settlement of FLSA claims.  However, there is a long line of judicial authority standing for the proposition that employee rights to

overtime under the FLSA "cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) (internal citations omitted); *see also Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945) (holding that Congress did not intend that an employee should be allowed to waive his right to liquidated damages by private agreement); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946) (distinguishing between private settlements and stipulated judgments in judicial proceedings, noting "we think the requirement of pleading the issues and submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties").

Based on this Supreme Court precedent, federal courts have generally held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). The first, as provided by the FLSA itself, is through the issuance of wage payments under supervision by the Secretary of Labor. *See* 29 U.S.C. § 216(c). In the absence of Department of Labor supervision:

> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

3

*Lynn's Food Stores*, 679 F.2d at 1353 (citing *Gangi*, 328 U.S. at 113 n.8). Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair compromise of a bona fide wage and hour dispute, the settlement may be approved, and stipulated judgment entered.

This single obligation—to ensure that a settlement is "fair"—can be contrasted with the Court's responsibility to oversee traditional class settlements under Federal Rule of Civil Procedure 23, which include the facilitation of "reasonable" notice, the obligation to hold a hearing on the fairness, reasonableness, and adequacy of the settlement, and ensuring that class members have an opportunity to object to the settlement. But these specific obligations are outlined in Federal Rule 23(e). These requirements expressly do not apply to a settlement of a collective action under the FLSA:

> There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member, and as such, is bound by judgment, whether favorable or unfavorable, unless he has "opted out" of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively "opted into" the class; that is, given his written, filed consent.

*Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996) (quoting *LaChapelle v. Owens Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975)).

Here, even though there has been no conditional certification of a FLSA collective, the Plaintiff has negotiated a settlement, described in detail below, that

4

includes a pool of money that will be available to any qualified field service specialist who chooses, after notice, to opt-in to claim overtime compensation out of the fund.  Only those field service specialists who choose to opt-in will be required to release their claims.  Nevertheless, despite the fact that the settlement will not bind any field service specialist who does not choose to make a claim, this Court has been careful to make sure that the settlement is fair and reasonable for all who are affected by it.

As far as the ERISA claims are concerned, the settlement of this action is before class certification and the Defendants have not sought a class settlement.  Thus, the settlement of the ERISA claims are not subject to the procedures of Rule 23 governing class settlements because only individual claims are being settled.  As explained when Rule 23 was amended in 2003, the Advisory Committee Notes stated that the amendment:

> resolves the ambiguity in former 23(e)'s reference to dismissal or compromise of a "class action."   That language could be—and at times was—read to require court approval of settlements with putative class representatives that resolved only individual claims.  The new rule requires approval only if the claims, issues, or defenses of a *certified class* are resolved by settlement, voluntary dismissal, or compromise.

Fed. R. Civ. P. 23(e), 2003 advisory committee note.

### B.   Summary of the Claims

The Court has carefully reviewed the claims in this case and concluded that it was prudent for the parties to enter into a compromise settlement.  First, on the core FLSA issue of whether Plaintiff was an employee or an independent

5

contractor, there was a significant dispute over whether there was, in fact, an employer/employee relationship between Plaintiff and Ecolab.  Plaintiff marshaled arguments to show that the field service specialists were subject to Ecolab's direction and control over the manner and means in which their work was performed, but Ecolab countered, arguing that the economic reality of the company's relationship with the field service specialists was an independent-contractor relationship, not an employer/employee one.  Ecolab also asserted that the Independent Contractor Agreement it entered into with the field service specialists established that the field service specialists were not employees of Ecolab and that the field service specialists could terminate their relationship with Ecolab at any time upon written notice.  Ecolab claimed, for example, that by negotiating the number of hours they worked and deciding when they performed the audits, the field service specialists, who were certified professionals who received minimal training and instruction from Ecolab, maintained control over the manner in which their work was performed.  In addition, Ecolab claimed that in many instances the field service specialists worked for other companies or had regular employment elsewhere.  Ecolab was prepared to present evidence that the field service specialists also provided the majority of their own equipment and materials, including their own uniform (aside from a shirt and badge), automobile, computer, internet connection, phone line, office materials, and items necessary to perform the audits.  Furthermore, Ecolab did not withhold payroll or other taxes from the field service specialists' compensation and issued them a Form 1099,

and the field service specialists were responsible for tracking and documenting their own expenses.

Second, even if there was a determination that Plaintiff was not an independent contractor, Defendants raised a series of arguments to show that Plaintiff's FLSA claim was minimal and that at best only a small amount of overtime compensation would eventually be awarded.  Specifically, Defendants argued that: (a) the field service specialists were fully compensated through piece rate payments for all work; (b) the field service specialists were paid for their travel time through the mileage overage provided by Ecolab; (c) the time the field service specialists spent commuting to the first and from the last site of the day would not be compensable under the FLSA; (d) the minimal administrative tasks the field service specialists performed from home were not compensable under the FLSA; (e) the minimal time the field service specialists spent performing administrative tasks would not render their commute time compensable under the FLSA; and (f) any arguable overtime would have to be calculated at one-half the regular rate because the field service specialists were paid on a piece rate basis.

Plaintiff countered with her own set of arguments, including the contention that Ecolab did not pay for "piece work" but, in fact, paid an hourly rate that varied from person to person.  Nonetheless, Plaintiff faced the substantial risk that, in the end, the Court would determine that the field service specialists were independent contractors.  Before agreeing on settlement terms, Plaintiff's

7

counsel obtained a substantial amount of information from Ecolab concerning the amount of overtime hours that could be at issue in the case for both Plaintiff McInnis and the other field service specialists who could make claims. Plaintiff's attorneys thus engaged in due diligence to assess the potential scope of damages in the case.

That aside, Plaintiff also faced substantial risk in going forward with her ERISA claims. As with the FLSA claim, Defendant Ecolab contended that the economic realities of the relationship reflected that the field service specialists were properly classified as independent contractors. Moreover, Defendant argued that Plaintiff lacked standing under ERISA, 29 U.S.C. § 502(a), because she did not qualify as a plan participant, that her ERISA claim was untimely, that she failed to exhaust administrative remedies, and that she could not pursue a fiduciary breach claim under § 502(a)(3). Although Plaintiff again had countervailing arguments to meet these defenses, it was reasonable for Plaintiff to pursue the settlement option.

### C. Settlement Terms

#### (1) Settlement Fund

Ecolab will pay $30,000 into a settlement fund that will be used to pay for the settlement of overtime claims and other claims that were asserted in the lawsuit. Notice will be issued to anyone who worked as a field service specialist between January 1, 2009, and January 31, 2012, and who had at least one work week in which he or she recorded twenty or more service hours. "Service hours"

will be a defined term in the Notice and will mean hours recorded conducting audits or other work where the service hours were recorded.  This should ensure that anyone who could possibly claim unpaid overtime (when service hours, travel time, specialty hours, and alleged administrative hours are added together) will receive notice and an opportunity to opt-in to the settlement.  Ecolab's on-line invoice records indicate that this group is comprised of 263 individuals.  All parties believe there are some additional individuals who did not submit their invoices for work done for Ecolab on-line who might also meet this criterion and could submit claims.  The Notice will be sent both by U.S. mail and by email to each recipient and will contain the following information:

- A statement of the Notice's purpose;

- A description of the claims and defenses raised in the lawsuit;

- An explanation of the settlement that has been reached by the parties;

- An explanation of what the putative class member need to do in order opt-in to the settlement;

- An explanation of the legal rights that the putative class member currently possesses, and the impact on those rights of either opting in to the settlement or not opting in (including a release of the FLSA claim and the ERISA claim but no general release);

- A description of how the settlement will be administered, including a timeline and contact information.

The entire settlement fund will be distributed to those putative collective members who have opted in to the settlement on a pro rata basis.  The parties will use data maintained by Ecolab regarding service hours and reimbursed

9

mileage to prepare a settlement spreadsheet containing the name of each individual to whom notice is to be issued; the number of recorded service hours per week for every week in which that individual recorded more than twenty service hours; and an imputed average number of hours that individual spent on travel time per week.  The travel time will be calculated by adding the total annual mileage reported by each opt-in for 2009, 2010, and 2011, dividing that number by the number of weeks in which the individual had recorded service hours, and then dividing that number by 40 mph to approximate the average time spent driving per week.

The settlement spreadsheet will calculate the total number of possible claimed unpaid overtime hours for each opt-in by adding together, for each week, (a) the recorded service hours; (b) the calculated travel time; and (c) an extra 6.5 hours to approximate allegedly unrecorded specialty hours and administrative time.  If this sum is greater than forty, then the excess will be totaled to calculate a potential claim for unpaid overtime.  Only those who have potential unpaid overtime claims will participate in the settlement fund, unless none of the opt-ins have a potential claim.  Those who opted in but did not have unpaid overtime hours will not recover monies from the settlement fund. The settlement fund will then be distributed pro rata to all opt-ins using the potential unpaid overtime numbers.

In the unlikely event that no one opts in to the settlement, then the settlement fund will revert back to Ecolab.  This is a fair result because without

any opt-ins Ecolab will not be achieving any benefits of the settlement (i.e., no one will be releasing their claims). In the event that **all** of those who opt-in to the settlement are determined, under the formula described above, to have **no potential for unpaid overtime hours**, then the entire settlement fund will be distributed pro rata to each such opt-in based on the total number of service hours recorded from January 2009 through January 31, 2012.

### (2) Settlement of Suzette McInnis Claims

Defendants will pay Plaintiff McInnis $45,000 and, in return, receive a general release from Plaintiff for the present claims asserted against Defendants, a series of other claims she has against Ecolab, as well as all unknown claims. Plaintiff's other claims against Ecolab include a personal injury claim for a knee injury that Plaintiff suffered on the job, an age discrimination claim arising out of an alleged adverse employment action taken by Ecolab, and a defamation claim. All of these additional claims were the subject of negotiation in the settlement conference. In addition, this settlement includes any compensation that Plaintiff could seek for her work as the representative Plaintiff. She will not be filing a separate claim for money out of the overtime fund.

### (3) Attorney's Fees

As part of the settlement, Ecolab will pay Plaintiff's attorney's fees in the amount of $40,000. Although no fee petition to the Court was required in connection with this settlement, Plaintiff's counsel have submitted time records to support the reasonableness of this portion of the settlement. Those records

show that Plaintiff's lead counsel fees and expenses, calculated on an hourly basis at hourly rates that would be reasonable for this type of complex litigation, to date are $94,446.67.  And the fees and expenses of Plaintiff's experienced local counsel to date are $13,768.94, for a total for the two firms of $108,215.61. And the work of Plaintiff's attorneys is not concluded; Plaintiff's attorneys have the responsibility to notify the potential opt-ins and to assure that the fund is distributed according to the above described terms.  Thus, the settlement included a very significant compromise of Plaintiff's attorney's fees and expenses.  This compromise was justified by the fact that after this case was commenced, when Plaintiff's attorneys gained access during the settlement negotiations to the data from Ecolab about the amount of alleged overtime hours involved in the case, it became apparent that a settlement of the sort entered into would be a fair resolution of the case.  But, in order to achieve this settlement, Plaintiff's attorneys were required to put into this well-defended case all of the same time and effort that would have been required to achieve a much larger settlement that might have been the result if the data had been different.

## CONCLUSION

This Court supervised the settlement negotiations that led to this settlement.  The parties were represented by skilled, experienced counsel who negotiated at arm's length.  In addition to settlement of Plaintiff's own claims (for which Plaintiff is giving a general release to Defendants), a fund has been set up for other field service specialists to opt-in and file their own claims, if they choose

to do so, but without any foreclosure of their rights to pursue overtime or employee benefits claims, or any other claims, if they choose not to do so. Based on all of the above, this Court concludes that the settlement was fair and reasonable.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that judgment be entered dismissing this case after the parties have effectuated the settlement terms and have filed a joint stipulation of dismissal.

Date:   February 17, 2012

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 2, 2012** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.